# United States Court of Appeals for the Federal Circuit

2009-1044

THE FOREST GROUP, INC.,

Plaintiff-Appellee,

v.

BON TOOL COMPANY,

Defendant-Appellant,

and

CIBON INDUSTRIAL
and SHANGHAI HONEST TOOL CO., INC.,

Defendants.


Kristin K. Tassin, Dry & Tassin, P.L.L.C., of Houston, Texas, argued for plaintiff-appellee. Of counsel was Cheri Duncan, Cheri Duncan Attorney at Law, of Houston, Texas.

Richard A. Ejzak, Cohen & Grisgy, P.C., of Pittsburgh, Pennsylvania, argued for defendant-appellant. With him on the brief was Alicia M. Passerin.

Carl S. Kravitz, Zuckerman Spaeder LLP, of Washington, DC, for amicus curiae Paul Hletko.

Appealed from: United States District Court for the Southern District of Texas

Judge Nancy F. Atlas

# United States Court of Appeals for the Federal Circuit

2009-1044

THE FOREST GROUP, INC.,

Plaintiff-Appellee,

v.

BON TOOL COMPANY,

Defendant-Appellant,

and

CIBON INDUSTRIAL
and SHANGHAI HONEST TOOL CO., INC.,

Defendants.

Appeal from the United States District Court for the Southern District of Texas in case no. 05-CV-4127, Judge Nancy F. Atlas.

_____

DECIDED:  December 28, 2009
_____

Before RADER, PLAGER, and MOORE, <u>Circuit Judges</u>.

MOORE, <u>Circuit Judge</u>.

Bon Tool Company (Bon Tool) appeals a final decision from the United States District Court for the Southern District of Texas.  After a bench trial, the district court found that the Forest Group, Inc. (Forest) falsely marked its stilts with intent to deceive the public, and the district court fined Forest $500 for a single decision to falsely mark. The district court also determined that U.S. Patent No. 5,645,515 (the '515 patent) was not invalid, that Bon Tool did not infringe the '515 patent, and that Forest had not

violated the Lanham Act. The court declined to find the case exceptional or award attorney fees. For the reasons set forth below, we affirm in part, vacate in part, and remand.

## BACKGROUND

William Armstrong and Joe Lin are the named inventors on the '515 patent, which claims an improved spring-loaded parallelogram stilt of the type commonly used in construction. See '515 patent fig.1. The claimed stilt contains a floor platform, a shoe platform, and extendable vertical supports that can be used to move the shoe platform to different heights. These platforms and supports are pivotally connected in a parallelogram configuration. A leg support is attached to the side of the rear vertical support and is attached to the shoe platform by a clamp, referred to in the '515 patent as a yoke (50). The patent discloses improvements in the design of the yoke structure and the design of the strap for attaching the leg support to a user's leg. The independent claims of the '515 patent require a "resiliently lined yoke."



**FIG. 1**

Mr. Lin and Mr. Armstrong each formed a company for selling stilts covered by the '515 patent. Mr. Lin created Forest, and Mr. Armstrong created Southland Supply Company (Southland).[1] Southland sold stilts to Bon Tool, a tool reseller. Bon Tool later stopped purchasing from Southland and started purchasing stilts from a foreign supplier, Shanghai Honest Tool Co., Ltd. (Honest Tool), which manufactured identical replicas of Southland's stilts without a license from Forest.

In December 2005, Forest sued Bon Tool for infringement of the '515 patent. Bon Tool counterclaimed alleging false marking pursuant to 35 U.S.C. § 292, a Lanham Act violation pursuant to 15 U.S.C. § 1125, and seeking a declaratory judgment that the

---

[1] Both Mr. Lin and Mr. Armstrong assigned their rights to Forest. Southland sold stilts under a license from Forest.

'515 patent was invalid.  In February 2007, the district court issued its claim construction.  The district court construed the term "resiliently lined yoke" to mean "a yoke or clamp lined with a material that is capable of being elastically or reversibly deformed," and the court concluded that the claim term required a lining distinct from the yoke itself.  On August 3, 2007, the district court concluded that Forest presented no evidence that the yoke in Bon Tool's stilts had a separate lining as required by the court's claim construction and granted summary judgment of noninfringement in favor of Bon Tool.  The district court then held a bench trial on Bon Tool's counterclaims.

The district court found that Forest falsely marked its S2 stilts with its '515 patent number after November 15, 2007 and assessed Forest a $500 fine for a single offense of false marking.[2]  The district court found that Forest had the requisite knowledge that its S2 stilt was not covered by the '515 patent after a district court in a related case granted summary judgment of noninfringement.  In 2001, Forest had accused Warner Manufacturing Company (Warner) of selling stilts that infringed the '515 patent.  In 2003, Warner asserted that its stilts did not infringe because they did not include a "resiliently lined yoke."  Warner filed a declaratory judgment action in 2005 in the United States District Court for the District of Minnesota seeking a judgment of noninfringement.  On March 30, 2007, the district court construed the term "resiliently lined yoke" in a manner nearly identical to the construction in the present case.  On

---

[2]    Mr. Lin testified that he instructed his manufacturer to remove the patent marking from this order of stilts, however, the district court did not find his testimony credible.  The court noted the absence of any documents, phone records, emails or letters to support Mr. Lin's claim that he instructed the manufacturer to stop marking the S2 stilts.  The court further found it incredible that Lin would not have checked the new parts to ensure that they did not contain the patent number had he instructed the manufacturer to stop marking.

November 15, 2007, the district court granted summary judgment of noninfringement in favor of Warner because Warner's stilts did not have a resiliently lined yoke as defined by the court.

By the time Warner was granted summary judgment, Forest had hired new patent counsel, who advised Forest to modify its stilts to include a resilient lining. The district court considered the evidence relating to Forest's alleged intent to deceive and found that Forest knew as of November 15, 2007—the date of the summary judgment of noninfringement in the Warner case—that its S2 stilts were not covered by the '515 patent. The district court found that Forest placed at least one order to its manufacturer for additional S2 model stilts marked with the '515 patent number after November 15, 2007 and fined Forest $500 for a single offense of false marking.

The district court granted summary judgment for Forest on Bon Tool's remaining counterclaims, deciding that Forest did not violate § 43 of the Lanham Act and that the '515 patent was not invalid. Further, the district court found that the case was not exceptional and denied claims for attorney fees by both parties. Bon Tool appeals. We have jurisdiction pursuant to 35 U.S.C. § 1295(a)(1).

DISCUSSION

Bon Tool appeals the district court's decision on three grounds. First, Bon Tool asserts the district court erred when it concluded that Forest did not have the requisite knowledge to falsely mark prior to November 15, 2007. Second, Bon Tool argues that the district court erred in its interpretation of the false marking statute, 35 U.S.C. § 292, when it determined that the statute provided for a penalty based on each decision to mark rather than on a per article basis. Third, Bon Tool argues that the district court

clearly erred in finding the case not exceptional and abused its discretion in denying attorney fees.

## I. False Marking—Knowledge

The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public. See Clontech Labs. Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005). "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." Id. (citing Seven Cases of Eckman's Alterative v. United States, 239 U.S. 510, 517–18 (1916)). A party asserting false marking must show by a preponderance of the evidence that the accused party did not have a reasonable belief that the articles were properly marked. Id. at 1352–53. An assertion by a party that it did not intend to deceive, standing alone, "is worthless as proof of no intent to deceive where there is knowledge of falsehood." Id. at 1352.

The district court found that Forest had the requisite knowledge to falsely mark by November 15, 2007 when it received the second summary judgment determination. Bon Tool claims that the district court clearly erred because Forest had the requisite knowledge at a much earlier date. We review a finding of false marking after a bench trial for clear error. Id. at 1353. Under a clearly erroneous standard of review, we reverse where after review we are "left with the definite and firm conviction that a mistake has been committed." Id. (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

The district court did not clearly err in finding that Forest lacked intent to deceive prior to November 15, 2007. The district court found that Forest genuinely believed its stilts were covered by the '515 patent prior to this date. The district court noted that the patent application was written by experienced patent counsel who had an exemplar of the stilt on which Messrs. Lin and Armstrong sought the patent. The court further noted that neither Mr. Lin nor Mr. Armstrong had "strong academic backgrounds" or "in-depth appreciation of patent law" and that Mr. Lin was not a native English speaker. Forest Group, 2008 U.S. Dist. LEXIS 57134, at *15 n.5. Based on the facts in this case, the district court did not clearly err in finding that Forest did not have the requisite knowledge that its own S2 stilts did not fall within its patent claims until November 15, 2007. No doubt the quantum of proof regarding Forest's knowledge in this case is quite high. We do not suggest that multiple claim constructions or summary judgments are required before the requisite knowledge for false marking can be found. Even if we would have found such knowledge at an earlier date, we cannot conclude that the district court's fact finding on this issue was clearly erroneous.

## II. False Marking—Offense

Bon Tool argues that the district court misinterpreted 35 U.S.C. § 292 when it assessed only $500 in penalties against Forest for a single "decision to mark its stilts after it knew the stilts did not meet all the claims of the '515 Patent." See Forest Group, 2008 U.S. Dist. LEXIS 57134, at *21. Statutory interpretation is a question of law that we review de novo. Fina Tech., Inc. v. Ewen, 265 F.3d 1325, 1327 (Fed. Cir. 2001). Section 292 provides a civil penalty for false marking of goods. It states in relevant part:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number

> importing that the same is patented, for the purpose of deceiving the public . . . Shall be fined not more than $ 500 for every such offense.

35 U.S.C. § 292(a) (2006).

The plain language of the statute does not support the district court's penalty of $500 for a decision to mark multiple articles. Instead, the statute's plain language requires the penalty to be imposed on a per article basis. The statute prohibits false marking of "<u>any</u> unpatented <u>article</u>," and it imposes a fine for "<u>every</u> such offense." <u>Id.</u> (emphasis added). The statute requires a fine to be imposed for every offense of marking any unpatented article. The act of false marking is the offense punished by the statute. The phrase "for the purpose of deceiving the public" creates an additional requirement of intent but does not change the relationship between the act of marking an article and the penalty. We conclude that the statute clearly requires that each article that is falsely marked with intent to deceive constitutes an offense under 35 U.S.C. § 292.

Forest would like us to hold, as the First Circuit did a century ago in <u>London v. Everett H. Dunbar Corp.</u>, 179 F. 506 (1st Cir. 1910), that the false marking statute should be interpreted to impose a single fine for continuous false marking. However, the statute at issue in <u>London</u> differs from the current statute in critical ways. The <u>London</u> court interpreted false marking language from the Patent Act of 1870, which stated in relevant part that "if any person . . . shall in any manner mark upon or affix to any unpatented article the word 'patent,' or any word importing that the same is patented, for the purpose of deceiving the public, he shall be liable for every such offense to a penalty of <u>not less than one hundred dollars</u>." Patent Act of 1870, ch. 230,

§ 39, 16 Stat. 198, 203 (emphasis added). The First Circuit noted that the statute's $100 minimum penalty would make application on a per article basis inequitable:

> Patented articles are so varied in kind and in value that, if we construe the statute to make each distinct article the unit for imposing the penalty, the result may follow that the false marking of small or cheap articles in great quantities will result in the accumulation of an enormous sum of penalties, entirely out of proportion to the value of the articles, while the marking of expensive machines used in limited numbers may result in the infliction of penalties which are comparatively slight in relation to the pecuniary value of the articles.

London, 179 F. at 508. The court concluded that "[i]t can hardly have been the intent of Congress that penalties should accumulate as fast as a printing press or stamping machine might operate." Id. The London court therefore decided that the continuous false marking of multiple articles should constitute a single offense subject to a distinct penalty. Id.

In 1952, several decades after London, Congress changed the $100 minimum fine to a maximum fine of $500, with the explanation that courts had been interpreting the $100 as a maximum fine. 35 U.S.C. § 292 (1952); 1952 U.S.C.C.A.N. 2394, 2424. Both the statutory language and the underlying policy rationale supporting the London court's interpretation changed. Under the current statute, district courts have the discretion to assess the per article fine at any amount up to $500 per article. Congress' affirmative change of the statute's penalty from a minimum to a maximum fine eliminated the policy consideration expressed by the court in London of not imposing disproportionate fines for the false marking of small and inexpensive articles.

Although a number of district courts followed London, imposing fines for continuous marking of multiple articles, they have generally done so without analyzing the effect of the 1952 amendment on the false marking statute. See, e.g., A.G. Design

& Assocs., LLC v. Trainman Lantern Co., No. C07-5158RBL, 2009 U.S. Dist. LEXIS 8320, at \*9–10 (W.D. Wash. Jan. 23, 2009) (finding the marking of up to 15,000 lanterns over two years as constituting a single "offense"); Undersea Breathing Sys., Inc. v. Nitrox Techs., Inc., 985 F. Supp. 752, 782 (N.D. Ill. 1997); Sadler-Cisar, Inc. v. Commercial Sales Network, Inc., 786 F. Supp. 1287, 1296 (N.D. Ohio 1991); Joy Mfg. Co. v. CGM Valve & Gauge Co., 730 F. Supp. 1387, 1399 (S.D. Tex. 1989); Precision Dynamics Corp. v. Am. Hosp. Supply Co., 241 F. Supp. 436, 447 (S.D. Cal. 1965). But see Enforcer Prods., Inc. v. Birdsong, No. 1-93-CV-1701-CC, slip op. at 20–21 (N.D. Ga. Nov. 29, 2005) (fining defendants $50 for each product or product packaging falsely marked).

Recognizing that a single $500 fine for false marking on many occasions "would eviscerate the statute," a number of courts adopted a time-based approach to § 292. Icon Health & Fitness, Inc. v. Nautilus Group, Inc., No. 1:02 CV 109 TC, 2006 WL 753002, at \*16 (D. Utah Mar. 23, 2006) (imposing a penalty for each week that false marking occurred); see also Brose v. Sears, Roebuck & Co., 455 F.2d 763, 766 n.4 (5th Cir. 1972) (noting that a court could limit the fine to each day, week, or month the articles were produced); Krieger v. Colby, 106 F. Supp. 124, 131 (S.D. Cal. 1952) (concluding that each day products were falsely marked constituted a separate offense). These cases fall in line with several early false marking cases, in which penalties were imposed for each day that products were falsely marked. See, e.g., Hoyt v. Computing Scale Co., 96 F. 250, 251 (S.D. Ohio 1899); Hotchkiss v. Samuel Cupples Wooden-Ware Co., 53 F. 1018, 1021 (E.D. Mo. 1891). Although these time-based penalties were creative attempts to reconcile the statute's language with opinions such as

London, this time-based approach does not find support in the plain language of § 292. Section 292 clearly requires a per article fine.

Policy considerations further support the per article interpretation of § 292. The marking and false marking statutes exist to give the public notice of patent rights. "Congress intended the public to rely on marking as a 'ready means of discerning the status of intellectual property embodied in an article of manufacture or design.'" Clontech Labs., 406 F.3d at 1356 (quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc., 489 U.S. 141, 162 (1989)). Acts of false marking deter innovation and stifle competition in the marketplace. 7 Donald S. Chisum, Chisum on Patents § 20.03[7][c][vii] (2009). If an article that is within the public domain is falsely marked, potential competitors may be dissuaded from entering the same market. False marks may also deter scientific research when an inventor sees a mark and decides to forego continued research to avoid possible infringement. See Bonnie Grant, Deficiencies and Proposed Recommendations to the False Marking Statute: Controlling Use of the Term 'Patent Pending', 12 J. Intell. Prop. L. 283, 283 (2004). False marking can also cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete. Cf. Clontech Labs., 406 F.3d at 1356 n.6 ("In each instance where it is represented that an article is patented, a member of the public desiring to participate in the market for the marked article must incur the cost of determining whether the involved patents are valid and enforceable.").

These injuries occur each time an article is falsely marked. The more articles that are falsely marked the greater the chance that competitors will see the falsely

marked article and be deterred from competing. See Lans v. Digital Equip. Corp., 252 F.3d 1320, 1327 (Fed. Cir. 2001) ("In sum, knowledge of the patentee's identity facilitates avoidance of infringement with design changes, negotiations for licenses, and even early resolution of rights in a declaratory judgment proceeding."). This court's per article interpretation of § 292 is consonant with the purpose behind marking and false marking.

Forest's proposed statutory construction—that the statute imposes a single $500 fine for each decision to falsely mark—would render the statute completely ineffective. Penalizing those who falsely mark a mere $500 per continuous act of marking, which act could span years and countless articles, would be insufficient to deter in nearly all cases. Congress' interest in preventing false marking was so great that it enacted a statute which sought to encourage third parties to bring qui tam suits to enforce the statute.

Forest argues that interpreting the fine of § 292 to apply on a per article basis would encourage "a new cottage industry" of false marking litigation by plaintiffs who have not suffered any direct harm. This, however, is what the clear language of the statute allows. Section 292(b) provides that "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." 35 U.S.C. § 292(b). As noted by Forest, an amicus brief was filed in this case by an individual who created a holding company to bring qui tam actions in false marking cases. Commentators have discussed a surge of such actions in recent years, noting the possible rise of "marking trolls" who bring litigation purely for personal gain. See Donald W. Rupert, Trolling for Dollars: A New Threat to Patent Owners, 21 No. 3

Intell. Prop. & Tech. L.J. 1 (2009) (citing five false marking cases filed since 1997); A. Justin Poplin, <u>Avoiding False Patent Marking Claims</u>, Law360, October 9, 2009, http://www.law360.com/articles/116798 ("Sensing a new source of revenue, individuals have begun suing large corporations for false patent marking when an expired patent number appears on a product.").

Rather than discourage such activities, the false marking statute explicitly permits <u>qui tam</u> actions. By permitting members of the public to sue on behalf of the government, Congress allowed individuals to help control false marking. The fact that the statute provides for <u>qui tam</u> actions further supports the per article construction. Penalizing false marking on a per decision basis would not provide sufficient financial motivation for plaintiffs—who would share in the penalty—to bring suit. It seems unlikely that any <u>qui tam</u> plaintiffs would incur the enormous expense of patent litigation in order to split a $500 fine with the government. Forest's per decision construction is at odds with the clear language of the statute and, moreover, would render the statute completely ineffective.

This does not mean that a court must fine those guilty of false marking $500 per article marked. The statute provides a fine of "<u>not more than</u> $500 for every such offense." 35 U.S.C. § 292(a) (emphasis added). By allowing a range of penalties, the statute provides district courts the discretion to strike a balance between encouraging enforcement of an important public policy and imposing disproportionately large penalties for small, inexpensive items produced in large quantities. In the case of inexpensive mass-produced articles, a court has the discretion to determine that a fraction of a penny per article is a proper penalty.

We hold that the plain language of 35 U.S.C. § 292 requires courts to impose penalties for false marking on a per article basis. In this case, the district court found that Forest falsely marked its stilts after November 15, 2007. The district court did not, however, determine the number of articles falsely marked by Forest after November 15, 2007 or the amount of penalty to be assessed per article. Therefore, we vacate the $500 fine imposed by the district court and remand to the district court for determinations consistent with this opinion.

### III. Attorney Fees

We review a denial of attorney fees under 35 U.S.C. § 285 for an abuse of discretion, but the antecedent determination of whether the case is exceptional is a question of fact that we review for clear error. Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003). The prevailing party must prove the case is exceptional by clear and convincing evidence. Id. at 1327. The district court found the case not exceptional and denied Bon Tool's request for attorney fees. Bon Tool argues that the denial of attorney fees was an abuse of discretion based on Forest's filing of a frivolous lawsuit and because of alleged litigation misconduct. The alleged misconduct relates to: (1) concealing evidence, including the late production of the patent counsel opinion letter and alleged concealment by Forest of the addition of a flexible liner to the SS stilts; (2) obstructing discovery, including last-minute cancellation of depositions of Mr. Lin and his wife; and (3) Mr. Lin allegedly falsely testifying about attempts to remove the '515 patent number from the S2 stilts. The district court saw fit to sanction Forest for discovery abuses alleged by Bon Tool. However, the district court still found that Bon Tool did not prove the case exceptional by clear and convincing evidence, noting

that Bon Tool had been largely unsuccessful in its counterclaims. Forest Group, 2008 U.S. Dist. LEXIS 57134, at *26.

As to the frivolous lawsuit claim, this issue relates directly to the district court's finding that Forest had a reasonable belief that its products (and therefore the exact replicas sold by Bon Tool) were covered by the '515 patent until November 15, 2007. Based on this fact finding, the district court found that the case was filed by Forest in good faith in December 2005. By November 2007, as noted by the district court, Forest was no longer pursuing claims against Bon Tool and was instead only defending against counterclaims. Further, although Bon Tool did not infringe the '515 patent, the district court did not find the patent invalid. The district court's finding that the case was not exceptional was not clearly erroneous.

We have considered the parties' other arguments in this case and find them to be without merit.

CONCLUSION

For the foregoing reasons, we hold that the district court did not clearly err in finding that Forest had the requisite knowledge to falsely mark as of November 15, 2007. Because the district court's construction of the statute was wrong, we vacate the district court's award of $500 in penalties for a single offense of false marking and remand to the district court for recalculation of fines under 35 U.S.C. § 292 consistent with this opinion. Finally, we affirm the district court's denial of attorney fees.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED