# United States Court of Appeals for the Federal Circuit

---

**JUNIPER NETWORKS, INC.,**
*Plaintiff-Appellant,*

**v.**

**PETER M. SHIPLEY,**
*Defendant-Appellee.*

---

2010-1327

---

Appeal from the United States District Court for the Northern District of California in Case No. 09-CV-0696, Judge Saundra Brown Armstrong.

---

Decided: April 29, 2011

---

RICHARD L. RAINEY, Covington & Burling, LLP, of Washington, DC, argued for plaintiff-appellant. On the brief were JONATHAN S. KAGAN, MORGAN CHU, DAVID C. MCPHIE, and REBECCA L. CLIFFORD, Irell & Manella LLP, of Los Angeles, California

COLE M. FAUVER, Robins, Kaplan, Miller & Ciresi L.L.P., of Minneapolis, Minnesota, argued for defendant-appellee. With him on the brief were MARTIN R. LUECK, and BRENDA L. JOLY.

---

Before RADER, *Chief Judge*, NEWMAN, and LINN, *Circuit Judges*.

RADER, *Chief Judge*.

The United States District Court for the Northern District of California granted Peter M. Shipley's ("Shipley's") motion to dismiss Juniper Networks, Inc.'s ("Juniper's") false marking qui tam action for failure to state a claim. *Juniper Networks v. Shipley*, No. 09-0696, 2010 WL 986809, at \*10 (N.D. Cal. Mar. 17, 2010) ("*Dismissal Order*"). Because Juniper's Amended Complaint does not reasonably allege an "unpatented article" within the meaning of 35 U.S.C. § 292, this court affirms.

I

Juniper makes and sells computer networking products to businesses, including a variety of firewall products. Juniper asserts that Shipley, an alleged computer "hacker," has maintained a website at the URL <http://www.dis.org> (the "Website") since 1995, ostensibly for the "hacker community." Am. Compl. ¶¶ 9, 12 (May 19, 2009). Juniper further alleges that Shipley has maintained the Website at his home on a network environment connected to the internet.

In 1995 and 1996, Shipley allegedly developed software known as "Dynamic Firewall," which Juniper asserts he used in connection with the Website. On or about December 10, 1997, Shipley allegedly provided information on the current projects portion of his Website regarding Dynamic Firewall, along with a series of other current projects under development by "people in the hacker scene in the San Francisco/Berkeley Bay Area and their friends." *Id*. at ¶ 18; Joly Decl. Ex. C (printout from www.dis.org/projects.html dated Dec. 21, 2007).

In pertinent part, the current projects portion of the Website stated as follows:

## Current Projects

Here is a list of current projects and research currently underway by people in the hacker scene in the San Francisco/Berkeley Bay Area and their friends. Most or all of these projects will be released to the public upon completion.

. . . .

**Dynamic Firewall [Dover] \*\*\* *Patent Pending* \*\*\***

"Shields holding captain …".
"D.IP.SHI.T" Dynamic IP SHield Technology A selfmodifying active firewall/packet filter designed to act as a LAN auto-defense and offense monitor/tool. This is an idea I came up with a few years ago.
**Status**: basic log file monitoring *funtioning* [sic], now implementing core rulesets

*Id.* Juniper alleges that this information was provided for commercial purposes rather than as an informal or humorous description.

On September 12, 2000, the Patent and Trademark Office ("PTO") issued U.S. Patent No. 6,119,236 to Shipley. Juniper asserts that on or about December 3, 2000, Shipley reconfigured the current projects page to reference this patent, as follows:

**Dynamic Firewall [Dover] \*\*\* *Patent # 6,119,236* \*\*\***

"Shields holding captain …".
"D.IP.SHI.T" Dynamic IP SHield Technology A selfmodifying active firewall/packet filter designed to act as a LAN auto-defense and offense monitor/tool. This is an idea I came up with a few years ago.
**Status**: *functioning* ….

Am. Compl. ¶ 32; Joly Decl. Ex. B (printout from www.dis.org/projects.html dated Dec. 3, 2000).

On October 16, 2001, the PTO issued U.S. Patent No. 6,304,975 to Shipley. Juniper alleges that on or about October 29, 2001, Shipley again reconfigured the Website such that it listed both patents:

**Dynamic Firewall** [Dover] *** *Patent # 6,119,236 and 6,304,975* ***

"Shields holding captain …".
"D.IP.SHI.T" Dynamic IP SHield Technology A selfmodifying active firewall/packet filter designed to act as a LAN auto-defense and offense monitor/tool. This is an idea I came up with a few years ago.
**Status**: *functioning* ….

Am. Compl. ¶ 38; Joly Decl. Ex. A (printout from www.dis.org/projects.html dated Oct. 29, 2001). Juniper alleges that Shipley continues to include these patent markings on the Website.

Another portion of the Website allegedly offers paid consulting services through a company Shipley founded called Network Security Associates. These services include programming projects and network security auditing.

Juniper filed this false marking case after the current owner of U.S. Patent Nos. 6,119,236 and 6,304,975 accused Juniper of infringing those patents in a separate lawsuit. *See Enhanced Sec. Research, LLC v. Juniper Networks, Inc.*, No. 09-871, 2010 WL 2898298, at *1 (D. Del. July 20, 2010). Relying on information obtained during the discovery phase of that suit, Juniper alleges that an embodiment of "Dynamic Firewall" purportedly operated on Shipley's home network beginning in 1996, and that Shipley used that embodiment of "Dynamic Firewall" as a component of the Website. Juniper further alleges that "Dynamic Firewall" was destroyed in 1999 due to a hard drive crash in a computer in Shipley's home.

Shipley allegedly did not recreate the prototype or produce another product embodying the invention.

Shortly after learning that the only embodiment of "Dynamic Firewall" was destroyed in 1999, Juniper brought this lawsuit accusing Shipley of false marking under 35 U.S.C. § 292. In its original complaint, filed February 17, 2009 ("Compl."), Juniper accused Shipley of falsely marking "the Website and any firewall or other security products or services operating thereon" with the words "Patent Pending," "Patent # 6,119,236," and "Patent # 6,119,236 and 6,304,975" from 1999—the date Dynamic Firewall was allegedly destroyed—to the present. Compl. ¶¶ 29-30.

Shipley thereafter filed a motion to dismiss Juniper's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The district court granted Shipley's motion on three independent grounds. *Juniper Networks v. Shipley*, No. 09-0696, 2009 WL 1381873, at *7 (N.D. Cal. May 14, 2009). First, the district court held that Juniper did not allege conduct within the scope of the statute, reasoning that Juniper did not plead any nexus between Shipley's marking, affixing, or using of a patent and the advertising of the product. *Id*. at *3. Second, the district court held that Juniper did not allege intent to deceive with particularity. *Id*. at *4. Finally, the district court held that the applicable five year statute of limitations barred Juniper's claim. *Id*. at *4-7. The court provided Juniper leave to amend. *Id*. at *7.

Juniper subsequently filed its Amended Complaint. Among other changes, Juniper revised its false marking allegation to accuse Shipley of falsely marking "the Website and any firewall or other security products or services operating thereon, as well as web pages generated by the Website." Am. Compl. ¶ 69. In the decision on appeal,

the district court dismissed Juniper's Amended Complaint for failure to state a claim—without leave to amend again. *Dismissal Order* at *10. The district court held that Juniper had not pled facts showing that Shipley had marked an "unpatented article" within the meaning of § 292(a) because, "when considered in context," the "marking" on the website referred to the Dynamic Firewall project, "*not* that the software was functioning or operating *on the Website*." *Id.* at *8. The district court further found that even if the "marking" could be imputed to Shipley's Website generally, Juniper did not allege facts establishing that the Dynamic Firewall was "unpatented" since the complaint acknowledges that the PTO granted Shipley two patents. *Id.* at *9. The court concluded:

> [W]hat Juniper is complaining about is not that the public was deceived by a false patent marking; but rather that the public was misled into believing that his Website was running on software that no longer exists . . . . Because no amendment can cure the infirmities inherent in Juniper's claim, the Court grants Shipley's motion and dismisses the amended complaint without leave to amend.

*Id.*

Juniper appeals the dismissal of its Amended Complaint. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

This court reviews dismissal for failure to state a claim upon which relief can be granted under the law of the regional circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). Our sister circuit, the United States Court of Appeals for the Ninth Circuit,

reviews dismissals for failure to state a claim without deference. *Davis v. Pac. Capital Bank, N.A.*, 550 F.3d 915, 916 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. "[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge in unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008).

A false marking claim requires an intent to deceive the public, *see Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321, 1328 (Fed. Cir. 2010), and sounds in fraud, *In re BP Lubricants USA Inc.*, No. 960, 2011 WL 873147, at *2 (Fed. Cir. Mar. 15, 2011). As such, false marking claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake." *Id.* at *1-2.

"Rule 9(b) requires a plaintiff to plead in detail 'the specific who, what, when, where, and how' of the alleged fraud." *Id.* at *2 (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.") (quotations omitted). These pleading requirements "must be applied in a fashion that relates to false

marking claims." *In re BP Lubricants*, 2011 WL 2873147, at \*4. A party alleging fraud must "set forth *more* than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124.

## III

In relevant part, 35 U.S.C. § 292(a) states that "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word 'patent' or any word or number importing the same is patented, for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense." Thus, "[t]he two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." *Forest Grp. Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). "When the statute refers to an 'unpatented article' the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked." *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).

Juniper's Amended Complaint does not state facts showing that an "unpatented article" was marked upon, affixed with a label, or advertised in a manner importing that it is patented. Juniper does not allege that the Dynamic Firewall software itself was falsely marked. *See* Am. Compl. ¶ 69. Any such claim would likely be time barred under 28 U.S.C. § 2462 and in conflict with this court's precedent that the mismarked article must actually exist, as the sole embodiment of Dynamic Firewall was allegedly destroyed in 1999. *See Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990) ("[S]ection 292 requires that the article mismarked actually exists. In other words, the article must be completed before section 292 will allow a claim to continue.").

Instead, Juniper alleges that the falsely marked un-patented article is "the Website and any firewall or other security products or services operating thereon, as well as web pages generated by the Website." Am. Compl. ¶ 69. To support this contention, Juniper notes the listing of the Dynamic Firewall status as "functioning," as well as the statement "[s]hields holding captain" adjacent to the patent marks. Juniper alleges that a person viewing Shipley's Website after 1999 would mistakenly believe that Dynamic Firewall was "functioning" on the Website to repel hacker attacks, when it could not have been.

As an initial matter, this court must consider whether websites can qualify as "unpatented articles" within the scope of § 292. The Patent Act includes a marking provision to give the public "a ready means of discerning the status of intellectual property embodied in an article of manufacture or design." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989). False marking can injure the public interest in full and free competition "because the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer or seller of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article." *Clontech*, 406 F.3d at 1356-57; *see also Forest Grp.*, 590 F.3d at 1302-03. Because these policy concerns apply equally to websites as to traditional articles of manufacture or design, and because websites may both embody intellectual property and contain identifying markings, this court holds that websites can qualify as unpatented articles within the scope of § 292.

Turning to the "unpatented article" at issue here, the "functioning" and "[s]hields holding captain" statements

invoked by Juniper appear exclusively on the page entitled "Current Projects." This page purports to provide the viewer with "a list of current projects and research underway by people in the hacker scene in the San Francisco/Berkeley Bay Area and their friends." This page further notes that "[m]ost or all of these projects will be released to the public upon completion." Joly Decl. Exs. A-C. Thus, the Website expressly categorizes Dynamic Firewall as a "current project" that was "underway." The website does not indicate that Dynamic Firewall was actively protecting the Website. Additionally, the "status" updates focused on by Juniper are specific for each project and change over time. Thus some projects are categorized as "[i]n [p]rogress," while others are categorized as "functioning," "working," or "done." *Id.* None of these disclosures reasonably suggest that Dynamic Firewall was protecting the Website. Nothing on the Website reasonably suggests that any projects other than Dynamic Firewall relate to the accused marks. While required to draw all reasonable inferences in favor of the plaintiff, this court need not indulge in unwarranted inferences. *See Metzler*, 540 F.3d at 1064-65. Thus, as correctly held by the district court, "it is beyond cavil that, when considered *in context*, the reference to 'functioning' relates to the progress of the project, not that the software was functioning or operating *on the Website*." *Dismissal Order* at *8.

Juniper contends that the district court erred by not directly addressing the "affixing" or "advertising" prongs of § 292. With respect to the affixing prong, Juniper argues that the Website generates web pages that show patent number designations in the form of a label adjacent to the words "Dynamic Firewall." This argument suffers from the same fundamental problem as Juniper's marking argument—namely, when considered in context,

the allegedly affixed marks relate to Dynamic Firewall as opposed to the Website, software operating on the Website, or pages generated by the Website.

With respect to the advertising prong, Juniper contends that the markings on the Website demonstrate the superior security of the Website to encourage sales of various products, including Dynamic Firewall. Even assuming that this rises to the level of an advertisement, which is controverted, one cannot reasonably infer that the advertising refers to the Website, software operating on the Website, or pages generated by the Website, as opposed to Dynamic Firewall.

Juniper also criticizes the district court for misapplying the standard under Rule 12(b)(6), arguing that its Amended Complaint sufficiently alleges Shipley's improper marking, affixing, and advertising. To the contrary, as instructed by the Supreme Court, *see Iqbal*, 129 S. Ct. at 1950, the district court drew on its "judicial experience and common sense" in identifying the unwarranted inference at the heart of Juniper's claim. In doing so, the district court provided a cogent and informed opinion and avoided the cost and burden of unnecessary discovery.

This court has considered Juniper's additional arguments and allegations, but found them unpersuasive. Because an "unpatented article" is an essential element for a false marking claim under 35 U.S.C. § 292, this court affirms the dismissal of Juniper's Amended Complaint.

IV

The district court dismissed Juniper's Amended Complaint without leave to amend. *Dismissal Order* at *9. Under Ninth Circuit law, dismissal with prejudice is only appropriate when it is clear on de novo review "that the

complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The district court in this case had previously permitted Juniper to amend its complaint. *Dismissal Order* at *1. The district court also expressly found that no amendment could cure the infirmities inherent in Juniper's claim. *Id.* at *9. While Juniper contends that knowledge within the relevant community and additional language on the Website would bolster its allegations, this court agrees that the Website excerpts provided by Shipley are clear and unambiguous on their face. This court finds no error in the District Court's determination that Juniper's Amended Complaint could not be saved by further amendment.

This case differs from *BP Lubricants*. In *BP Lubricants*, this court directed a trial court to dismiss the original complaint in a false marking qui tam action but granted leave to amend, in part because this court had not previously opined on the applicability of Rule 9(b) to false marking. *BP Lubricants*, 2011 WL 873147, at *3-5. In contrast, the district court in this case specifically applied the Rule 9(b) standard in dismissing Juniper's original Complaint and previously granted Juniper leave to amend. *Juniper*, 2009 WL 1381873, at *4, *7. Moreover, as explained above, the excerpted Website language is clear and unambiguous on its face. The district court therefore did not err by dismissing Juniper's Amended Complaint without leave to amend.

V

Shipley alternatively argues that Juniper's claim should have been dismissed for lack of standing. Shipley argues that neither Juniper nor the government suffered any cognizable injury from the alleged false marking because Shipley did not offer any falsely marked product for sale to the public that could have caused actual injury.

"Without jurisdiction the court cannot proceed at all in any cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). In *Stauffer*, 619 F.3d at 1325, decided after Shipley filed his brief, this court addressed the issue of qui tam standing under the false marking statute. The court held that (a) "a violation of [§ 292] inherently constitutes an injury to the United States"; (b) a qui tam plaintiff "has standing to assert the injury" to the United States, regardless of whether the plaintiff has suffered any individual injury; and (c) the qui tam plaintiff's standing "does not depend upon the alleged injury to the United States being proprietary, as opposed to sovereign." *Id.* at 1325-26. Thus, even if the United States suffers no proprietary injury involving diminishment of the federal treasury, the Patent Act makes deceptive patent mismarking "an injury to the United States." *Id.* at 1325. Because the United States suffers an injury when the false marking statute is violated, Juniper had standing to assert a qui tam claim against Shipley under 35 U.S.C. § 292.

VI

For the foregoing reasons, this court affirms the district court's dismissal with prejudice of Shipley's false marking qui tam action for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**AFFIRMED**

Costs

Costs to Shipley.