# United States Court of Appeals
# for the Federal Circuit

---

**KENNETH C. BROOKS,**
*Plaintiff-Appellant,*

v.

**DUNLOP MANUFACTURING INC.,**
*Defendant-Appellee,*

AND

**UNITED STATES,**
*Intervenor.*

---

2012-1164

---

Appeal from the United States District Court for the Northern District of California in case no. 10-CV-4341, Judge Charles R. Breyer.

---

Decided: December 13, 2012

---

KENNETH C. BROOKS, Law Office of Kenneth C. Brooks, of Campbell, California, argued for plaintiff-appellant.

GINA A. BIBBY, Foley & Lardner, LLP, of Palo Alto, California, argued for defendant-appellee. With her on

the brief was WILLIAM J. ROBINSON, of Los Angeles, California.

ADAM C. JED, Attorney, Civil Division, United States Department of Justice, of Washington, DC, argued for intervenor. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, MELINDA HAAG, SCOTT R. MCINTOSH and DOUGLAS N. LETTER, Attorneys.

––––––––––––––––––

Before NEWMAN, PROST, and MOORE, *Circuit Judges*.

PROST, *Circuit Judge*.

Kenneth Brooks appeals from the decision of the United States District Court for the Northern District of California dismissing his false marking claim and rejecting his argument that the application of amendments to 35 U.S.C. § 292 effectuated by the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA") to pending actions is unconstitutional. Because we conclude that Congress's retroactive elimination of the *qui tam* provision from § 292 does not violate the Due Process Clause or the Intellectual Property Clause of the Constitution, we affirm.

## I. BACKGROUND

### A

Section 292(a) makes it unlawful for any person to engage in specified acts of false patent marking, such as affixing to a product a mark that falsely asserts that the item is patented, with the intent to deceive the public. Any person who engages in false patent marking prohib-

ited by § 292(a) "[s]hall be fined not more than $500 for every such offense."

Prior to 2011, 35 U.S.C. § 292(b) provided that "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." More particularly, § 292(b) authorized private parties (relators) to bring a *qui tam* or informer's suit for violations of § 292(a). Section 292(b) did not, however, specify the procedures to be used in adjudicating the relator's suit, nor did it expressly authorize the government to file its own suit to collect the penalty. The *qui tam* provision of § 292 had been the subject of ongoing litigation, both before district courts and this court. *See, e.g.*, *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009) (holding that § 292 required the court to impose a penalty for false marking on a per article basis); *Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. 2010) (holding that the defendant did not falsely mark its products for purposes of deceiving the public); *Stauffer v. Brooks Brothers, Inc.*, 619 F.3d 1321 (Fed. Cir. 2010) (holding that the *qui tam* relator had standing to bring suit, but refusing to decide the constitutionality of § 292 without the issue having been raised or argued by the parties).

On September 16, 2011, the President signed into law the AIA, which amends § 292 in several respects. Specifically, Section 16 of the AIA eliminates the *qui tam* provision of § 292(b) and amends § 292(a) to provide that "[o]nly the United States may sue for the penalty authorized by this subsection." AIA § 16(b)(1). In lieu of the *qui tam* provision, the AIA amends § 292(b) to authorize actions for damages by any person "who has suffered a competitive injury as a result of a violation" of § 292(a). *Id.* § 16(b)(2). Moreover, the AIA narrows the scope of

liability by providing that marking products with expired patents is not a violation. *Id.* § 16(b)(3). And of particular relevance here, the AIA expressly provides that "[t]hese amendments . . . shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act." *Id.* § 16(b)(4).

B

In September 2010, Mr. Brooks sued Dunlop Manufacturing Inc. ("Dunlop") under the then-prevailing version of § 292, alleging that Dunlop marked a guitar string winder with the number of a patent that was both expired and invalidated. Dunlop moved to dismiss the case, arguing both that Mr. Brooks had not pled the required intent to deceive and that the *qui tam* provision violated the Take Care Clause, U.S. Const. art. II, § 3. The United States intervened to defend the constitutionality of § 292, and the district court stayed the case pending our resolution of the same constitutional question in *FLFMC, LLC v. Wham-O, Inc.*, No. 2011-1067, 2011 WL 4952991 (Fed. Cir. Oct. 19, 2011).

While the *Wham-O* case was pending, Congress enacted the AIA, amending § 292 and eliminating *qui tam* actions under that section. The *Wham-O* parties agreed that the passage of the AIA, by eliminating the *qui tam* provision on which the case was predicated, rendered their case moot. *Id.* at *1.[1] Shortly thereafter, Dunlop moved to lift the stay and to dismiss this case, arguing that Mr. Brooks no longer has standing because he can no longer recover a statutory penalty and has not alleged any

---

[1] In *Wham-O*, we also noted that "[t]he parties do not challenge, and this court does not address, the constitutionality of the retroactive application of the amendments to § 292." *Id.*

right to damages for competitive injury. Mr. Brooks opposed the motion, arguing that Congress's elimination of *qui tam* actions constitutes a taking of Mr. Brooks's property without just compensation.

The district court held a hearing on Dunlop's motion to dismiss. At that hearing, Mr. Brooks also introduced, for the first time, the argument that the AIA violates the Due Process Clause. Specifically, Mr. Brooks argued that he has "rights [that] are contractual in nature" under the former version of § 292 and that "repudiat[ing] the Government's contractual obligations may violate the Constitution."

After supplemental briefing on this new contractual issue, the district court dismissed Mr. Brooks's case. *Brooks v. Dunlop Mfg. Inc.*, No. 3:10-cv-04341, 2011 WL 6140912 (N.D. Cal. Dec. 9, 2011). The district court first held that the application of the false marking amendments to pending *qui tam* actions under § 292 does not violate the Due Process Clause. *Id.* at *4-5. After observing that Congress is free to give retroactive effect to economic legislation as long as doing so is a rational means of pursuing a legitimate legislative purpose, the district court found "that Congress, by eliminating the *qui tam* provision in § 292, rationally furthered a legitimate legislative purpose by comprehensively reducing the costs and inefficiencies associated with the 'cottage industry' of false marking litigation that developed after the Federal Circuit's decision in *Forest Group, Inc.*, 590 F.3d 1295." *Id.* at *5. The district court further determined that it "need not address whether a binding contract was actually formed," because even were there such a contract, the due process inquiry would still require only that Congress had a rational basis for changing the law. *Id.* at *4.

Indeed, Mr. Brooks "submit[ted] no legal authority . . . that would require a higher standard of scrutiny." *Id.*

The district court also rejected Mr. Brooks's claim that AIA's amendments to pending *qui tam* actions under § 292 violated the Takings Clause. Specifically, the district court reasoned that even if a government act constitutes a taking, it cannot be declared "void so long as the government 'provide[s] an adequate process for obtaining compensation.'" *Id.* at *5 (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985) (alteration in original)). "The government has provided such a compensation process by consenting to suit in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1)." *Id.* The district court went on to reject Mr. Brooks's argument that he cannot seek compensation under the Tucker Act because "no amount has been set forth by any party in this action." *Id.* at *6. That observation, the district court noted, "is the very reason [the] takings claim would likely fail, were it to be adjudicated." *Id.* The district court further noted that "[t]he Takings Clause protects only *vested* property rights." *Id.* (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994)). But a "'property right in any cause of action does not vest until a final unreviewable judgment is obtained.'" *Id.* (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009)). Mr. Brooks "never had the guarantee of a property interest in his lawsuit," the district court explained, "if for no other reason, because he might lose his case against Dunlop." *Id.*

On December 9, 2011, the district court issued a final judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Mr. Brooks filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

In reviewing a judgment on the pleadings, we follow the procedural law of the regional circuit. *Imation Corp. v. Koninklijke Philips Elecs. N.V.*, 586 F.3d 980, 985 (Fed. Cir. 2009). In the Ninth Circuit, a grant of judgment on the pleadings is reviewed de novo. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.,* 550 F.3d 778, 782 (9th Cir. 2008). The constitutionality of an act of Congress is a question of law that is likewise reviewed de novo. *Thomson Multimedia Inc. v. United States*, 340 F.3d 1355, 1359 (Fed. Cir. 2003).

## A

Mr. Brooks is no longer contesting the district court's rejection of his takings claim. Nor does he challenge the application of amended § 292 to future actions that have not yet been filed. Mr. Brooks, however, renews his claim that the Due Process Clause prevents Congress from applying the AIA's amendments to § 292 to pending *qui tam* actions. As Mr. Brooks admitted before the district court, if applied as intended by Congress, the AIA's amendments to § 292 have taken away whatever right Mr. Brooks may have had to bring a false marking claim against Dunlop because Mr. Brooks is not a competitor of Dunlop.

"No person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." *N.Y. Cent. R.R. Co. v. White*, 243 U.S. 188, 198 (1917); *see also Plaut v. Spendthrift Farm*, 514 U.S. 211, 226 (1995) ("When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome

accordingly."). Nevertheless, retroactive legislation, like the false marking provisions of the AIA at issue here, "must meet the test of due process." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984). "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches." *Id.* at 729; *see also United States v. Carlton*, 512 U.S. 26, 30-31 (1994). This "'burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.'" *Carlton*, 512 U.S. at 31 (quoting *Pension Benefit*, 467 U.S. at 729-30 (1984)).

According to Mr. Brooks, Congress's retroactive elimination of the *qui tam* provision of § 292(b) is arbitrary and irrational because it is tantamount to sanctioning Dunlop's public deception and indemnifying its violation of § 292. Mr. Brooks, however, overlooks that the AIA replaced *qui tam* actions under § 292(b) with a compensatory cause of action for any person who has suffered a competitive injury as a result of a false marking violation. Moreover, the United States may sue for the penalty authorized by § 292(a). Accordingly, we reject the argument that the AIA's amendments to § 292 somehow sanction public deception. We therefore turn to Mr. Brooks's more general argument that the retroactive elimination of the *qui tam* provision of § 292 is not justified by a rational legislative purpose.

As an initial matter, we cannot say that it was irrational for Congress to conclude that the costs associated with *qui tam* actions under § 292(b) exceeded their benefits, and to respond by replacing such actions with a compensatory cause of action for private parties suffering

competitive injury. Indeed, the legislative history of the AIA suggests that this is what many members of Congress had in mind. *See* 157 Cong. Rec. S5320 (daily ed. Sept. 6, 2011) (statement of Sen. Jon Kyl) ("The America Invents Act reins in abuses that are reflected in a recent surge in false marking litigation. It allows such suits to be brought only by those parties who have actually suffered a competitive injury as a result of false marking."). Commentators expressed similar concern that the *qui tam* action, combined with the statutory penalty, had created a surge of vexatious litigation and posed a risk of grossly disproportionate penalties for false marking. *See, e.g.*, Michael R. O'Neill, *False Marking Claims: The New Threat To Business*, 22 No. 8 Intell. Prop. & Tech. L.J. 22, 22-23 (2010) (noting that "false patent marking claims are now the new and very real threat to any business that marks any of its products or promotional materials with patent numbers").

It follows that, by making the elimination of the *qui tam* provision of § 292(b) retroactive, Congress "was in significant part attempting to reduce the litigation expenditures in the large number of complaints filed, but not yet subject to a final judgment." *Rogers v. Tristar Prods., Inc.*, No. 2011-1194, 2012 WL 1660604, at *3 (Fed. Cir. May 2, 2012) (nonprecedential) (per curiam order denying motion for reconsideration). In fact, the legislative history suggests that Congress was particularly concerned with the perceived abuses and inefficiencies stemming from false marking claims that were initiated before the AIA was signed into law. *See* 157 Cong. Rec. S1372 (daily ed. Mar. 8, 2011) (statement of Sen. Jon Kyl) ("[B]ecause the Federal Circuit's recent decision in *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, Fed. Cir. 2009, appears to have created a surge in false marking qui tam litigation, the changes made by paragraph (1) of section 2(k) of the

bill are made fully retroactive by paragraph (2).”); 157 Cong. Rec. S5320-21 (daily ed. Sept. 6, 2011) (statement of Sen. Jon Kyl) (“Currently, such suits are often brought by parties asserting no actual competitive injury from the marking—or who do not even patent or manufacture anything in a relevant industry. . . . They represent a tax that patent lawyers are imposing on domestic manufacturing . . . .”).  In our view, this alone constitutes a rational legislative purpose.  *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267-68 (1994) (holding that retroactive legislation “often serve[s] entirely benign and legitimate purposes,” including to “give comprehensive effect to a new law Congress considers salutary”).

But there is more.  At the time that Congress acted, there was a live question about the constitutionality of the then-existing *qui tam* provision.  *See, e.g.*, *Rogers*, 2012 WL 1660604; *Wham-O, Inc.*, 2011 WL 4952991.  This too appears to have been a concern when Congress eliminated the *qui tam* provision from § 292(b).  *See, e.g.*, 157 Cong. Rec. S1368 (daily ed. Mar. 8, 2011) (statement of Sen. Chuck Grassley).  Indeed, it was rational for Congress to pass legislation eliminating a potential constitutional issue and sparing the courts, private parties, and the United States the litigation burdens and risks associated with such issues.  At bottom, Congress made a considered choice to modify the private cause of action in § 292(b) and apply that modification to pending as well as future cases.  Given Congress’s legitimate concerns with respect to the cost and constitutionality of pending *qui tam* actions, we conclude that the retroactive application of amended § 292 to pending actions was a rational means of pursuing a legitimate legislative purpose.

B

Mr. Brooks primarily contends that by filing a lawsuit against Dunlop, he entered into a binding contract with the United States. Although he does not articulate what exactly this contract was for or what was promised to him, Mr. Brooks asserts that the *qui tam* provision of former § 292(b) was essentially an offer to enter into a unilateral contract—an offer which Mr. Brooks accepted when he filed suit. Then, according to Mr. Brooks, Congress violated the Due Process Clause when it retroactively eliminated the *qui tam* provision from § 292(b) and repudiated its contract with Mr. Brooks.[2] In particular, Mr. Brooks relies on *Perry v. United States* for the proposition that every time Congress "repudiate[s] the substance of its own engagements," it violates the Due Process Clause. 294 U.S. 330, 351 (1935).

Mr. Brooks's reading of *Perry* goes too far. Notably, the plaintiff in *Perry* had a written contract with the United States, in the form of a government bond. *Id.* at 346-48. That bond expressly imposed financial obligations on the United States, including the obligation to repay the borrowed funds in gold. *Id.* The federal legislation at issue in *Perry* relieved the government from the obligation to repay the debt in gold. *Id.* at 349. In contrast, nothing in the AIA relieves Congress from a financial obligation owed to Mr. Brooks. Rather, it simply eliminated his standing to bring a *qui tam* action under § 292.

---

[2]    To be clear, Mr. Brooks did not bring an actual breach of contract claim against the United States under the Tucker Act, 28 U.S.C. § 1491, or the Little Tucker Act, 28 U.S.C. § 1346. Rather, he only alleges that Congress's repudiation of the alleged contract violates the Due Process Clause.

Even more to the point, the pre-AIA version of § 292 was not an offer to enter into a unilateral contract with Congress.  The Supreme Court "has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights, but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat'l R.R. Passenger Corp. v. Atchison*, 470 U.S. 451, 465-66 (1985) (quoting *Dodge v. Bd. of Educ.*, 302 U.S. 74, 79 (1937)). "This well-established presumption is grounded in the elementary proposition that the principal function of the legislature is not to make contracts, but to make laws that establish the policy of the state." *Id.* at 466.  Accordingly, "the party asserting the creation of a contract must overcome this well-founded presumption and [courts should] proceed cautiously both in identifying a contract within the language of a regulatory statute and in defining the contours of any contractual obligation." *Id.*

In determining whether a statute creates a contract, the Court has instructed us to first look to the language of the statute.  *Id.*  Before passage of the AIA, § 292(b) provided that "[a]ny person may sue for the penalty, in which one-half shall go to the person suing and the other to the use of the United States."  Nothing in this language "create[s] or speak[s] of a contract" between the United States and a *qui tam* relator.  *Id.* at 467.  Although not necessarily determinative, no words typically associated with contract formation, such as "offer" or "acceptance," were used.  The far more natural interpretation of this text, which is not framed in contractual language, is that it simply authorized a *qui tam* action and specified how any penalty would be divided.

We next look to whether the circumstances surrounding the statute's passage manifested any intent by Congress to bind itself contractually. *Id.* at 468-70. Mr. Brooks has not pointed to any legislative history, or any other evidence, which suggests that during the passage of the pre-AIA version of § 292, Congress had the intent to enter into a contract with *qui tam* relators. The pre-AIA language of § 292(b) at issue here was added in 1952, when Congress recodified the patent laws. Act of July 19, 1952, Pub. L. No. 82-593, 66 Stat. 792, 814. The Senate Report stated that two paragraphs in the predecessor version were being "consolidated," a new form of false marking was being added, and the fine was being increased. S. Rep. 82-1979, at 31 (1952). The only mention of the *qui tam* action was that "[t]he informer action is included as additional to an ordinary criminal action." *Id.* There is no indication that Congress intended to create a special provision that forms a contract or otherwise vests rights upon the filing of suit.

Instead of legislative history, Mr. Brooks relies on the Ninth's Circuit's holding in *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993) for the broad proposition that *qui tam* provisions, including the one at issue here, operate as enforceable unilateral contracts. In *Kelly*, the Ninth Circuit held that *qui tam* relators under the False Claims Act ("FCA") meet the constitutional requirements for Article III standing because "the FCA effectively assigns the government's claims to *qui tam* plaintiffs." Id. at 748. In the course of its standing discussion, the court characterized the FCA's *qui tam* provisions as a "unilateral contract." *Id.* But the passing reference to a "unilateral contract" in *Kelly* was neither the Ninth Circuit's actual holding nor a necessary element of that holding. As shown by the Supreme Court's subsequent decision in *Vermont Agency of Natural Re-*

*sources v. United States ex rel. Stevens*, 529 U.S. 765 (2000), the comparison between a *qui tam* plaintiff and an assignee does not depend on the existence of contract between the government and the relator. Rather, the Court in *Vermont Agency* held that "a qui tam relator is, in effect, suing as a partial assignee." *Id.* at 733 n.4. The Court reached this conclusion without any suggestion that there is a contract between the government and the relator. *Id.* at 773-74, 778. Moreover, the *Kelly* decision merely reflects the Ninth Circuit's opinion regarding *qui tam* relator standing under the FCA. It does not address any opinion of Congress relating to whether the language of § 292 or the circumstances surrounding its passage manifest any intent on the part of Congress to bind itself contractually to false marking *qui tam* plaintiffs like Mr. Brooks.

Treating the former *qui tam* provision of § 292 as a unilateral contract offer would also be inconsistent with the history of *qui tam* provisions. It is true that *qui tam* provisions "have been in existence for hundreds of years in England, and in this country ever since the foundation of our government." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943) (quoting *Marvin v. Trout*, 199 U.S. 212, 225 (1905)). But federal courts have consistently recognized that amendments to *qui tam* statutes that interfere with a relator's pending action do not "deprive him of rights guaranteed by the Constitution." *United State ex rel. Rodriguez v. Weekly Publ'n, Inc.*, 144 F.2d 186, 188 (2d Cir. 1944). That is, a *qui tam* plaintiff has "no vested right" and his "privilege of conducting the suit on behalf of the United States and sharing in the proceeds of any judgment recovered, [i]s an award of statutory creation, which, prior to final judgment, [i]s wholly within the control of Congress." *Id.*; *accord United States ex rel. Bayarsky v. Brooks*, 210 F.2d 257, 258 (3d

Cir. 1954); *Sherr v. Anaconda Wire & Cable Co.*, 149 F.2d 680, 681 (2d Cir. 1945).

Because Mr. Brooks cannot point to "some clear indication that the legislature intend[ed] to bind itself contractually," Mr. Brooks cannot overcome the presumption that the pre-AIA version of § 292 was "not intended to create private contractual or vested rights." *Nat'l R.R. Passenger Corp.*, 470 U.S. at 465-66. Without a contract, Mr. Brooks's due process argument fails in every particular.

C

In addition to his due process arguments, Mr. Brooks contends that the retroactive elimination of the *qui tam* provision of § 292(b) violates the Intellectual Property Clause, U.S. Const. art. I, § 8, cl. 8. More precisely, Mr. Brooks argues that Congress's authority under the Intellectual Property Clause is subject to "a more searching analysis" than Congress's other enumerated powers. Appellant's Reply Br. 15. In support of his argument, Mr. Brooks relies on the Supreme Court's decision in *Graham v. John Deere Co.*, 383 U.S. 1 (1966). There, the Court explained that the Intellectual Property Clause is a "qualified authority" and that:

> Congress in the exercise of the patent power may not overreach the restraints imposed by the stated constitutional purpose. Nor may it enlarge the patent monopoly without regard to the innovation, advancement, or social benefit gained thereby. Moreover, Congress may not authorize the issuance of patents whose effects are to remove existent knowledge from the public domain, or to restrict free access to materials already available.

*Id.* at 5-6.

Mr. Brooks's reliance on *Graham* is unavailing. To be sure, Congress's patent power is limited. However, "[w]ithin the limits of the constitutional grant, the Congress may, of course, implement the stated purpose of the Framers by selecting the policy which in its judgment best effectuates the constitutional aim." *Id.* at 6. Here, the AIA's retroactive amendments to § 292 do not implicate the scope of the patent power, but rather, Congress's judgment in effectuating and maintaining a patent system.[3] Accordingly, our judicial review is limited to determining whether Congress's actions were "a rational exercise of the legislative authority conferred by the [Patent] Clause. On that point, we defer substantially to Congress." *Eldred v. Ashcroft*, 537 U.S. 186, 204-05 (2003); *see also Figueroa v. United States*, 466 F.3d 1023, 1031-32 (Fed. Cir. 2006) (citing *Eldred* and noting that "[i]n deciding whether . . . legislation was permissible under the Patent Clause, we accord great deference to Congress's policy determinations"). We have already determined that Congress's retroactive elimination of the *qui tam* provision of § 292(b) was a rational means of pursuing a legitimate legislative purpose. Accordingly, we conclude that the retroactive elimination of the *qui tam* provision of § 292(b) does not violate the Intellectual Property Clause.

---

[3] Mr. Brooks's argument that Congress's retroactive elimination of the *qui tam* provision of § 292(b) impermissibly extends patent monopolies lacks merit. False markers remain subject to penalties under § 292. Congress has merely traded one enforcement mechanism for another. As already noted, amended § 292 now authorizes both the United States and any person who has suffered a competitive injury as a result of a false marking violation to bring suit.

## III. CONCLUSION

We have considered Mr. Brooks's remaining arguments and find them unpersuasive. Accordingly, we affirm the final judgment of the district court.

**AFFIRMED**