NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**GORDON GRAVELLE, OPERATING AS CODEPRO MANUFACTURING,**
*Plaintiff-Appellant*

**v.**

**KABA ILCO CORPORATION,**
*Defendant-Appellee*

**KABA AG, KABA HOLDING AG,**
*Defendants*

———————————

2016-2318

———————————

Appeal from the United States District Court for the Eastern District of North Carolina in No. 5:13-cv-00642-FL, Judge Louise Wood Flanagan.

———————————

Decided: April 12, 2017

———————————

GORDON GRAVELLE, Thunder Bay, Ontario, Canada, pro se.

ALBERT P. ALLAN, Allan Law Firm, PLLC, Charlotte, NC, for defendant-appellee.

———————————

Before PROST, *Chief Judge,* LOURIE and TARANTO, *Circuit Judges.*

PER CURIAM.

Gordon Gravelle, operating as CodePro Manufacturing, sued Kaba Ilco Corp. (Kaba) in the Eastern District of North Carolina. In his complaint, he focused on the fact that Kaba falsely marked its key-cutting machines as "patent pending" for a time, as Kaba eventually admitted, and sought monetary relief under the Patent Act's false-marking provision, 35 U.S.C. § 292; the Lanham Act's false-advertising provision, 15 U.S.C. § 1125; and North Carolina's Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* Gravelle has represented himself in the district court and on appeal in this case.

Three orders of the district court in the case are before us. One is the district court's grant of summary judgment to Kaba. Order, *Gravelle v. Kaba Ilco Corp.*, No. 5:13-cv-642-FL, 2016 WL 2644890 (E.D.N.C. May 9, 2016), ECF No. 72 (Summary Judgment Order). The second is the district court's order granting Kaba $3,031.25 of the $11,640 Kaba sought to recoup expenses it incurred in successfully moving to compel Gravelle to attend a deposition at which he would be questioned. Order, *Gravelle v. Kaba Ilco Corp.*, No. 5:13-cv-642-FL, 2015 WL 9451047 (E.D.N.C. Dec. 23, 2015), ECF No. 59 (Reimbursement Order). The third order at issue is the award of attorneys' fees after the grant of summary judgment. Order, *Gravelle v. Kaba Ilco Corp.*, No. 5:13-cv-642-FL, 2016 WL 3920208 (E.D.N.C. July 15, 2016), ECF No. 85 (Fees Order).

Gravelle timely appealed those orders to the Fourth Circuit, which transferred the appeal to this court. We affirm the first two orders, but we vacate the order awarding attorneys' fees and remand on that issue for further consideration.

## I

Gravelle has been designing, marketing, and distributing electronic key-cutting machines for more than 20 years. From 1998 until around 2014, Gravelle sold a key-cutting machine model called the CodePro 4500. In an unspecified year in this period, Gravelle may have sold as many as 19 machines. In the years around 2006, Gravelle testified, he was selling "eight to ten" machines per year. By 2012, sales of the CodePro 4500 had dropped to about four machines per year, and in 2013 and 2014 he sold only four machines total. In 2010, Gravelle began marketing a second key-cutting machine, the RapidKey 7000. Between 2011 and 2015, Gravelle sold "around 35 or 32" RapidKey 7000 machines. In April 2015, Gravelle sold the rights to the RapidKey 7000 to Hudson Lock LLC (Hudson). Gravelle testified that between October 2014 and September 2015, Hudson sold "between 50 and 85" RapidKey 7000 machines and spent "probably . . . $30,000 in advertising." Gravelle refused to produce documentary evidence of his sales in response to Kaba's interrogatories.

Beginning around 2008, Kaba began marketing its EZ Code machine. It marked two features, the "automatic blade detection" and "automatic calibration," as "patent pending," although no patent application for those features was ever filed. Kaba sold 687 EZ Code machines between 2008 and 2015. Although Gravelle contacted Kaba three times to investigate the truth of Kaba's "patent pending" claims—by email on October 8, 2008; by phone on August 7, 2013; and by email on August 20, 2013—Kaba did not respond, and it continued to use the false marking through at least September 10, 2013.

Gravelle filed this lawsuit against Kaba in the Eastern District of North Carolina on September 6, 2013, focusing on Kaba's false marking of its products and

asserting claims under 35 U.S.C. § 292(a), under 15 U.S.C. § 1125, and under North Carolina law.[1] On February 10, 2015, the court granted the parties' joint request for an extension of the discovery deadline through April 30, 2015, because Gravelle had undergone ear surgery and could not attend a previously noticed deposition. The parties indicated that Gravelle would be available for deposition before the end of April, and Kaba properly noticed Gravelle's deposition for April 29, 2015. Kaba Ilco's Mem. in Support of its Mot. to Compel and for Expense Reimbursement Ex. F, *Gravelle v. Kaba Ilco Corp.*, No. 5:13-cv-642-FL (E.D.N.C. July 2, 2015), ECF No. 40. On April 21, 2015, Gravelle made it clear that he would not be attending that deposition either. *Id.* Ex. I. In July 2015, Kaba filed a motion to compel Gravelle's attendance at a deposition; Kaba supported the motion with fourteen exhibits. *Id.* The district court granted the motion to compel in a text order, stating: "For the reasons and on the bases therein stated, defendant's motion to compel, (DE 38), is ALLOWED." Text Order, *Gravelle v. Kaba Ilco Corp.*, No. 5:13-cv-642-FL (E.D.N.C. Aug. 19, 2015). Kaba filed a declaration to support its request for reimbursement of expenses relating to the motion to compel seeking $11,640.00. The district court awarded Kaba $3,031.25. Reimbursement Order 9. Gravelle paid the award and was deposed on September 18, 2015.

Kaba filed a motion for summary judgment on December 9, 2015, and Gravelle filed a motion for summary judgment on January 21, 2016. On May 9, 2016, the district court granted Kaba's motion on all counts, denied

---

[1] Gravelle named not only Kaba but two other related entities. Those other entities were dismissed from the suit in 2014, and Gravelle does not contest that dismissal.

Gravelle's motion, and entered judgment for Kaba. Summary Judgment Order 18.

On May 23, 2016, Kaba filed a motion for attorneys' fees. Although Gravelle did not respond, the district court addressed the motion on its merits, granting it on July 15, 2016. The court held that this was an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117(a) and a case involving a "complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading" under N.C. Gen. Stat. § 6-21.5. Fees Order 5–6. The amount of fees has yet to be determined.

Gravelle timely appealed to the Fourth Circuit on June 6, 2016. On June 23, 2016, the Fourth Circuit granted Gravelle's motion to transfer his appeal to this court. Order, *Gravelle v. Kaba Ilco Corp.*, No. 16-1646 (June 23, 2016). On August 10, 2016, Gravelle filed an amended notice of appeal to include the attorneys' fees award. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

Gravelle appeals the district court's summary judgment order, the order reimbursing Kaba for $3,031.25 in expenditures relating to the motion to compel, and the order granting attorneys' fees to Kaba. We review a grant of summary judgment *de novo*. *Lismont v. Alexander Binzel Corp.*, 813 F.3d 998, 1002 (Fed. Cir. 2016); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). We review the district court's reimbursement and attorneys' fees orders for abuse of discretion. *See, e.g.*, *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014); *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 320 (4th Cir. 2003).

## A

Summary judgment is appropriate where the evidence before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law," and it is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Conclusory and speculative assertions about a material fact are insufficient to create a triable issue on that fact. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Madey v. Duke Univ.*, 307 F.3d 1351, 1363 (Fed. Cir. 2002).

1

The Patent Act prohibits "mark[ing] upon, or affix[ing] to, or us[ing] in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public." 35 U.S.C. § 292(a). In order to sue under the false marking statute, a plaintiff must have "suffered a competitive injury as a result of a violation" of the marking statute. *Id.* § 292(b).[2] We have explained that a "competitive injury" is "'[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability

---

[2]    The competitive-injury requirement was introduced by the Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 16, 125 Stat. 284, 329 (2011), and applies in "all cases, without exception, that are pending on, or commenced on or after," September 16, 2011. *Id.*; *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1364–65 (Fed. Cir. 2012). The requirement applies in this action, commenced on September 6, 2013.

to compete with a defendant, caused by the defendant's unfair competition.'" *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1400 (Fed. Cir. 2015) (alteration in original) (quoting *Competitive Injury*, Black's Law Dictionary (9th ed. 2009)). In the false-marking context, the injury must be one inflicted on a firm's competitive activity, caused by the false marking. *Id.* at 1402; *see id.* at 1400 n.3.

The district court held that Gravelle failed to establish a competitive injury and therefore lacked statutory standing. Although the parties disputed whether Gravelle and Kaba were direct competitors, the court assumed that they were and still granted summary judgment that Gravelle had not shown the required competitive injury.

With respect to sales of the CodePro 4500, the district court determined that the decline in Gravelle's sales between 2006 and 2014 did not amount to a competitive injury. We need not address Gravelle's argument that the district court mistakenly viewed his business as not having suffered a competitive injury because the decline in sales was "insubstantial." It is enough that the district court correctly concluded that Gravelle did not put forth sufficient evidence to connect the decline in CodePro 4500 sales to Kaba's false marking of its machine as "patent pending." Indeed, Gravelle admitted that the reason the CodePro 4500 sales declined after 2006 was that Kaba had purchased the rights to the machine in November of 2006 and Gravelle "was not permitted to sell any more of these machines, save the 10 he had remaining in shop inventory." Appellant's Reply 3. In light of that admission, no reasonable jury could infer from Gravelle's decline in CodePro 4500 sales around the time of Kaba's false marking that the decline was an injury caused by the false marking.

With respect to the RapidKey 7000, Gravelle rests his competitive-injury contention on the assertion that, while he was "forced" to sell the rights to the RapidKey 7000 to

Hudson for $20,000,[3] the true value of those rights in the absence of Kaba's false marking was more than $8 million.  As an initial matter, however, the $8 million figure rests in the end on Gravelle's own estimate that he could have sold 12 units per *month* over 12 years.  The district court held that Gravelle's estimate, not backed by any other evidence, was too speculative to support a reasonable finding that Gravelle could have achieved that level of sales in light of the evidence that he sold a maximum of 19 CodePro 4500 machines per *year* even before Kaba's false marking, and at most 35 RapidKey 7000 machines over five years.  *Cf. Curley v. Adams Creek Assocs.*, 409 F. App'x 678, 680 (4th Cir. 2011) (finding "vague, unsubstantiated, and self-serving allegations" insufficient to establish fact at summary judgment).  Gravelle also points to a statement by Robert J. Sylvia, the President of Hudson, that as of December 2014 he thought that Hudson could sell 1000 RapidKey 7000 machines per year, which would generate approximately $2 million in annual profits.  That assertion, however, is about what *Hudson* might sell, not directly about what Gravelle would have sold; and if true, it tends to undermine Gravelle's claim that Kaba's marking prevented his realization of the full value of the rights he transferred to Hudson.

We need not definitively assess the sufficiency of the evidence on the RapidKey 7000's value.  Regardless, none of the evidence Gravelle cites permits a finding that ties

---

[3]    Although Gravelle asserts that he was paid $20,000 by Hudson, and the district court said the same thing, the contract provided to this court shows a purchase price of $10,000.  J.A. 218.  Gravelle's supplemented interrogatory responses indicate that he also received a $140 royalty on each RapidKey 7000 machine sold by Hudson.  J.A. 252.  We do not believe that these details matter to the analysis.

Kaba's marking activity to any diminution in the sales of the Gravelle model or the price Hudson paid. Gravelle has advanced no evidence that he was deterred from introducing or continuing to market a product similar to Kaba's falsely marked one or from engaging in innovation in the field of Kaba's product, or that he incurred costs in designing around the features Kaba marked as subject to a pending patent. *See Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1302–03 (Fed. Cir. 2009) (describing ways that false marking may harm competition). The only evidence that Gravelle puts forth to connect his alleged injury to Kaba's false marking is the assertion, in his affidavit, that "automatic blade detection" and "automatic calibration" are "highly desirable within the small locksmith community, at large, to the extent that same *could* readily influence a buyer[']s purchasing decision." J.A. 68 (emphasis added). That is simply too speculative and unexplained an assertion to support the causal proposition, which is anything but obvious, that buyers actually purchased the "patent pending" machines over Gravelle's machines—or would have bought Gravelle's machines (as opposed to either Kaba's or someone else's) had Kaba not falsely stated "patent pending." For this market-specific proposition, which is not one of the previously recognized mechanisms of competitive injury, *see Forest Group*, 590 F.3d at 1302–03, more than Gravelle's general speculation about what "could" occur is needed to create a triable issue.

Gravelle testified at his deposition that Hudson had to spend "probably . . . $30,000 in advertising to undo part of the damage that [Kaba] did by false advertising." J.A. 100. But when asked whether Hudson said "anything generally that indicates that they spend the—they spent marketing money to, as you put it, undo [Kaba's false marking]," Gravelle answered, "No. But I—they did say specifically—or in generally—or specifically that, you know, false marketing is very hard to overcome." *Id.* The

district court deemed this testimony "speculative" and "not entitled to credit at summary judgment." Summary Judgment Order 12. While credibility judgments are inappropriate at summary judgment, we interpret the district court as concluding that no reasonable juror could find that Gravelle's testimony was sufficient to show that the reason Hudson spent $30,000 advertising for a product it believed would generate $2 million in annual profits was that the expenditure was necessary to overcome Kaba's false marking. We agree.

Given the lack of concrete, non-speculative evidence of causation of an actual injury by Kaba's false marking, we affirm the entry of summary judgment for Kaba on Gravelle's false-marking claim.[4]

2

The Lanham Act makes "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact . . . liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a). To state a claim under § 1125, "a plaintiff must allege an injury to a commercial interest in reputation or sales," and that injury must be "proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1390 (2014). In other words, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertis-

---

[4]   Because we hold that Gravelle has failed to establish any injury caused by Kaba's false marking, we need not decide whether a reduced price for the sale of his business is a "competitive injury" under the statute.

ing; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

Just as Gravelle's evidence is insufficient to show that he suffered a competitive injury caused by Kaba's false marking, so it is insufficient to show an economic injury, or a likelihood of economic injury, "proximately caused" by Kaba's advertising. Citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247 (2d Cir. 2014), Gravelle argues that he is entitled to a presumption of injury because the parties were in direct competition. But Gravelle did not argue for a presumption in the district court, and in any event, *Merck* is inapposite, even aside from the fact that it comes from the Second Circuit, not the Fourth Circuit. *Merck* explicitly limits its holding to a two-player-market scenario, *id.* at 260–61, which the present case is not alleged to involve.[5]

Gravelle also contends that he need not show an actual injury because the Lanham Act provides for disgorge-

---

[5]    Gravelle also asserts that he is entitled to a presumption of consumer deception because the claims were literally false. The First, Second, Third, Eighth, and Eleventh Circuits have recognized such a presumption. *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 315–16 (1st Cir. 2002); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007); *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014); *Rhone-Poulenc Rorer Pharm. Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 516 (8th Cir. 1996); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002). However, that is a separate question from the issue of causation. *See*, *e.g.*, *Cashmere & Camel Hair*, 284 F.3d at 318 (holding that, although the plaintiff was entitled to a presumption of consumer deception, remand was required for further proceedings on causation).

ment of profits under 15 U.S.C. § 1117(a). Although Gravelle is correct that he need not be able to "quantify [his] losses with sufficient certainty to recover damages" in order to have a cause of action, he still must show that the "defendant's conduct has proximately injured an interest of the plaintiff's that the statute protects." *Lexmark*, 134 S. Ct. at 1392; *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 802 (5th Cir. 2011); *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 695 (6th Cir. 2000). Thus, the district court correctly held that "injury and damages are separate inquiries under the Lanham Act and that, without the former, there can be no entitlement to the latter." J.A. 20. We affirm the entry of summary judgment for Kaba on Gravelle's Lanham Act claim.

3

North Carolina's Unfair and Deceptive Practices Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "'In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff.'" *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) (quoting *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001)). For the reasons already stated, Gravelle has failed to establish an injury *caused* by Kaba's false marking. We therefore affirm the entry of summary judgment for Kaba on Gravelle's state-law claim.

B

Federal Rule of Civil Procedure 37(a) requires that where a motion to compel is granted, the court "must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses

incurred in making the motion" unless, among other things, the "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A). The district court awarded Kaba $3,031.25 to reimburse its expenditures related to its motion to compel Gravelle to attend his deposition. On appeal, Gravelle contends that he was substantially justified in not attending his already-once-postponed deposition of April 29, 2015, because he had a "doctors note advising [him] not to fly"; he was subject to "a conflicting court order which compelled [his] personal attendance before a civil court motion judge, for a hearing taking place in Ontario, Canada"; and "[l]ast minute International travel proved impossible, due to ongoing inquiry by Homeland Security, as initiated by [him], and cost prohibited nature for airline tickets, lodging, car rental, etc." Appellant's Br. 13.

The district court, in its brief text order, indicated its adoption of Kaba's reasons stated in its motion. Those reasons make clear that the court did not abuse its discretion in awarding this reimbursement.

First, the doctor's note in the record is dated January 29, 2015, and says only: "recommend defer flight next week due to medical reasons." Kaba's Mot. to Compel Ex. D. The district court could reasonably find that this note did not indicate that it would be medically dangerous for Gravelle to fly three months later, around April 29, 2015.

Second, the Canadian court order states: "The motion to amend the Statement of Claim shall be returnable on April 30, 2015 on notice to the Defendants." J.A. 347. On its face, that order imposes only a filing deadline, and there is no other evidence that the court required Gravelle to personally attend court on that day. Furthermore, Kaba offered to start Gravelle's deposition early on the 29th to allow him to catch a particular evening flight to Thunder Bay, Ontario, on which seats were available, so

that he could still attend court in Canada the following day.  Kaba's Mot. to Compel at 4–5, Exs. H–J.  The district court could reasonably determine that the Canadian court order was not an obstacle to Gravelle's attending an April 29, 2015 deposition.

Third, regarding the Homeland Security inquiry, Gravelle's opposition to Kaba's request for reimbursement indicates that Gravelle had been experiencing delays entering the United States, and as a result he initiated a redress inquiry.  He received a letter from Homeland Security on July 17, 2015, that neither confirmed nor denied that his personal information was similar to a listing on the terrorist watchlist and encouraged him to use his redress number when making flight reservations.  These facts do not indicate that Gravelle was prohibited from travelling to the United States or would have been unable to enter the country in April 2015, only that he may have experienced delays in doing so.

Finally, Gravelle complains that the "last-minute" international travel was cost prohibitive.  But Gravelle's deposition was noticed on April 7, 2015, giving him twenty-two days to plan his international travel.  Kaba's Mot. to Compel Ex. F.  Furthermore, Kaba's attorney had conferred with Gravelle before noticing his deposition to confirm that Gravelle would be available on April 29 and acceded to Gravelle's preference for the deposition to take place in Charlotte because it was easier for Gravelle to fly there than to other places in North Carolina.  *Id.* at Attachement ¶ 5.

For those reasons, we affirm the district court's Reimbursement Order.

## C

The district court awarded Kaba attorneys' fees for all three of Gravelle's causes of action.  Unusual circumstances are present here: we have questions about the

soundness of the stated bases for the award and no meaningful help from the parties in reviewing the award. In various situations, we have vacated and remanded for further consideration where "[w]e are unable to provide appellate review to the court's exercise of discretion." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986) (exceptional case determination); *see, e.g., High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013) (amendment of pleadings); *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315 (Fed. Cir. 2007) (ongoing royalties). The particular reason for that inability here may be unique to this case, but the result, we conclude, should be the same: vacatur and remand for further consideration.

In this court, Gravelle, proceeding pro se, amended his original notice of appeal so as specifically to add the Fees Order to the appeal, and he included a challenge to the Fees Order in the "informal brief" he subsequently filed under this Court's Rule 28(g), using the question-and-answer format of this Court's Form 12. In the informal brief, Gravelle extensively laid out his disagreement with various determinations by the district court, including the key determination that he had provided no proof of injury caused by the challenged conduct. In his answer to Form 12's question # 6 ("What action do you want the court to take in this case?"), he included this separately numbered statement: "2. Plaintiff further requests that this court reverse the District Court Order granting Kaba's motion for attorney fees. [See A23–29]." Appellant's Br. 12. Gravelle thus appealed the Fees Order.

In his informal brief, however, Gravelle did not present separate analyses of why the Fees Order and the Summary Judgment Order should be reversed. In the absence of separate arguments, his challenge to the Fees Order could reasonably be read as entirely dependent on his challenge to the Summary Judgment Order, *i.e.*, as contending only that, if summary judgment was reversed,

reversal of the fees award followed *a fortiori*. Kaba appears to have so read Gravelle's challenge to the Fees Order: in its brief, Kaba nowhere defends, or even discusses, the Fees Order, evidently treating that order as standing or falling with the Summary Judgment Order.

But that understanding of Gravelle's challenge on appeal to the Fees Order is not the only permissible one. This court generally interprets the pleadings of a pro se plaintiff liberally. *See, e.g., Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). Our Form 12 for informal briefs, which Gravelle used, contemplates considerable informality, which is reflected in practice. And in this case, when Kaba sought fees, the district court proceeded to apply the legal standards governing fees—which are more demanding than the standard Kaba had to meet to secure summary judgment—even though Gravelle did not file an opposition to the fees motion, let alone present an argument against fees distinct from his earlier argument against summary judgment. In these circumstances, Gravelle's informal brief can reasonably be read, and we concluded it should be read, as a request that this court determine whether the causation evidence passed the test of non-frivolousness even if it did not entitle him to a trial.

Nevertheless, neither Gravelle nor Kaba has provided any meaningful help in evaluating the Fees Order under the governing standards. We would affirm if we were persuaded, from our own independent review, that there is no potentially result-changing error in the Fees Order. But the award of fees here is not so self-evidently correct that we think the Order should be affirmed, even under the abuse-of-discretion standard of review, without further consideration on remand given the absence of meaningful argument in this court.

The common basis of the district court's award on all three causes of action was the court's conclusion that

Gravelle's case for causation of injury was not only insufficient to create a triable issue but actually frivolous. Fees Order 3; *see id.* at 5–6.[6] As an indication of frivolousness, the district court twice cited a page of Gravelle's deposition. *Id.* at 4 n.1, 6. Given the court's invocation of the deposition in discussing the causation issue, we take the court to have read the deposition passage as indicating Gravelle's agreement that he lacked proof of damages caused by Kaba's false marking.

Such a reading of the cited passage from Gravelle's deposition appears to be clearly erroneous. The passage says only that (the un-counseled) Gravelle would drop the Second Claim for Relief of his Complaint, which sought (aside from disgorgement of Kaba's profits) only the $500-per-unit fine that the 2011 amendments to 35 U.S.C. § 292(a) newly restricted to suits by the federal government. *See* J.A. 46 (Complaint); Kaba Ilco's App'x to Statement of Material Facts in Support of its Mot. for Summ. J. Ex. 1 at 169:1–20, *Gravelle v. Kaba Ilco Corp.*, No. 5:13-cv-642-FL (E.D.N.C. Dec. 9, 2015), ECF No. 55. The passage does not on its face concede lack of injury caused by Kaba's false marking. Moreover, in opposing summary judgment, Gravelle explained that he had not conceded that issue, J.A. 169, and the district court, in granting Kaba summary judgment, ruled on the false-marking claim on the merits of the causation issue, nowhere referring in that ruling to the supposed deposition concession.

---

[6] A plaintiff may lose its claims on summary judgment without that fact requiring a fee award or implying that the claims were objectively unreasonable or frivolous. *See, e.g., Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1315 (Fed. Cir. 2010) (in patent context); *Kohler v. Bed Bath & Beyond of California, LLC*, 780 F.3d 1260, 1266–67 (9th Cir. 2015) (non-patent context).

More broadly, while we agree that Gravelle lacked sufficient evidence of injury caused by Kaba's conduct to permit a reasonable finding of causation, we think, on the limited analysis before us, that the question of whether the evidence crossed the triable-issue threshold was a closer one than the district court concluded. It is not implausible that in some markets a number of potential customers, choosing between two similar machines, one marked "patent pending" and the other not, will buy the marked one because they think that buying the unmarked one exposes them to the risk of later infringing a patent of the seller of the marked one. The problem with Gravelle's case, on the merits, is that he did not point to enough evidence to permit a reasonable finding that the foregoing mechanism (or anything similar) would be at work for the customers of the particular machines in the particular market at issue here. But the assessment of frivolousness in this case, for purposes of attorneys' fees, focuses on a different question—namely, what a litigant could reasonably believe would constitute sufficient evidence to allow a reasonable inference of harm caused by the false marking.

On that issue, it is not clear to us, with nothing but the district court's opinion to go on, why that question is properly answered against Gravelle. The sufficiency of evidence to support a finding that Kaba's marking caused Gravelle competitive harm turns on judgments, as the district court indicated, about what is "reasonable to expect" or "plausible." Summary Judgment Order 12, 13. Here, Gravelle is deeply involved in this market, and he offered his own opinion that customers "could" be influenced by a "patent pending" marking. *See* J.A. 68. Standing alone, that is too speculative, as we have held in affirming the grant of summary judgment. But it is not clear that a person in Gravelle's position should be charged with understanding that merely possible influence ("could") is inadequate and that "influence" cannot be

asserted in a wholly general manner, but must be supported by evidence, whether from customers or others, concretely showing how customers would have been influenced by a marking in the specific market.

We avoid drawing final conclusions about the award of fees in this case. Without any helpful analysis on appeal, we conclude that the matter warrants further consideration. We therefore vacate the Fees Order and remand for such reconsideration.

### III

For the foregoing reasons, we affirm the district court's summary judgment order and its order reimbursing Kaba for $3,031.25 in fees related to its motion to compel, but we vacate its order awarding attorneys' fees and remand for further proceedings on that issue.

No costs.

**AFFIRMED IN PART, VACATED IN PART, REMANDED**